UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| STEPHANIE ALLEN,<br><br>                  Plaintiff,<br><br>  v.<br><br>TRAVEL GUARD GROUP INC., AIG TRAVEL, INC., and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,<br><br>                  Defendants. | CASE NO. C22-6005 BHS<br><br>ORDER |

This matter is before the Court on Defendants Travel Guard Group Inc., AIG Travel, Inc., and National Union Fire Insurance Company of Pittsburgh, PA's motion to compel arbitration. Dkt. 10.[1] Because Defendants fail to establish an entitlement to relief, their motion is denied.

//

//

//

---

[1] Defendants request oral argument for this motion. Dkt. 10 at 1. This request is DENIED.

ORDER - 1

## I.  BACKGROUND

Allen completed three separate transactions on Expedia.com. First, in August 2021, Allen purchased airfare, hotel accommodations, and a rental car reservation. Dkt. 1 ¶ 45. Second, in October 2021, Allen purchased airfare and a hotel accommodation. *Id.* ¶ 46. Third, in January 2022, Allen purchased airfare and a hotel accommodation. *Id.* ¶ 47. Before Allen completed each of these transactions, she was presented with an offer to purchase travel insurance provided by Defendants. *Id.* ¶ 48. Allen accepted this offer each time. *Id.* ¶¶ 45–47. Each of the charges for the travel insurance included not only the insurance premium, but also a mandatory fee for "assistance services." *Id.* ¶ 51.

During each of these transactions, Allen clicked on a button labeled "Complete Booking" and positioned below the following language: "By clicking on the button below, I acknowledge that I . . . have reviewed and accept the above . . . Terms of Use." Dkt. 11 ¶ 3. Expedia's "Website Terms of Use" contain an arbitration clause, which provides: "You and Expedia agree that **any and all Claims will be resolved by binding arbitration, rather than in court**. . . . This includes any Claims you assert against . . . any companies offering products or services through us (which are beneficiaries of this arbitration agreement)." Dkt. 11-1 at 3.

After Allen completed each of these transactions, she received an e-mail message confirming that she had purchased travel insurance. Dkt. 1 ¶ 36. Each of these e-email messages contained an Internet hyperlink to a webpage containing information concerning the purchased insurance policy. *Id.* ¶ 36. In turn, each of these webpages contained an Internet hyperlink to the purchased insurance policies. Dkts. 15-1, 15-3.

Defendants' insurance policies each contain the following arbitration clause:

"Notwithstanding anything in this coverage to the contrary, any claim arising out of or relating to this contract, or its breach, may be settled by arbitration, if mutually acceptable." Dkts. 15-2 at 8, 15-4 at 9.

Allen's class-action complaint alleges that Defendants, by charging the assistance services fees, violated Washington's Consumer Protection Act and breached the duty of good faith and fair dealing. Dkt. 1 ¶¶ 60–93. Defendants move to compel arbitration pursuant to the arbitration clause in Expedia's Website Terms of Use. Dkt. 10. Allen opposes this motion, asserting that the arbitration clause in Defendants' insurance policies controls. Dkt. 14.

The parties' arguments are addressed below.

## II.   DISCUSSION

Defendants contend that the arbitration clause in Expedia's Website Terms of Use governs Allen's claims, not the arbitration clause in their insurance policies. Dkt. 10 at 5–6. This is so, Defendants claim, because Expedia's arbitration clause is mandatory whereas their arbitration clause is merely permissive. *Id.* at 6. They further assert that, under Expedia's Website Terms of Use, Allen clearly and unambiguously agreed to arbitrate the arbitrability of her claims. *Id.* at 10–11. Defendants accordingly move to compel this matter to arbitration, including issues concerning the arbitrability of Allen's claims. *Id.* at 6, 11, 20

Allen responds that Defendants improperly attempt to enforce Expedia's arbitration clause over their own. Dkt. 15 at 5. She contends that, because her claims arise

out of or relate to the insurance policies, the arbitration clause in those policies governs her claims. *Id.* Because the arbitration clause in these insurance policies requires the parties to mutually accept arbitration before a dispute is submitted to arbitration, Allen asserts that Defendants' motion must be denied. *Id.* at 6.

"Generally, in deciding whether to compel arbitration, a court must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). "However, these gateway issues can be expressly delegated to the arbitrator where 'the parties *clearly and unmistakably* provide otherwise.'" *Brennan*, 796 F.3d at 1130 (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).

"To interpret the parties' contract, a court should look to 'general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration.'" *Boardman v. Pacific Seafood Group*, 822 F.3d 1011, 1018 (9th Cir. 2016) (quoting *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1036, 1049 (9th Cir. 1996)). However, silence or ambiguities concerning the delegation of arbitrability is resolved in favor of court adjudication. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944–45 (1995).

The Court first addresses whether the parties clearly and unmistakably delegated to an arbitrator the issues concerning the existence and scope of any arbitration

agreement. Because the parties apply Washington law when interpreting the writings at issue, *see* Dkt. 10 at 14, 18, 19; Dkt. 14 at 8 n.1; Dkt. 16 at 15, so does the Court.

Under Washington law, "[a]ll writings that are part of the same transaction are interpreted together." *Kelley v. Tonda*, 198 Wn. App. 303, 311 (2017) (citing Restatement (Second) of Contracts § 202(2) (Am. Law. Inst. 1981)); *accord Pelly v. Panasyuk*, 2 Wn. App. 2d 848, 868 (2018) ("Documents that are part of the same transaction are interpreted together."). "This is so, even if the instruments do not explicitly refer to each other." *Pelly*, 2 Wn. App. 2d at 868.

Here, both Expedia's Website Terms of Use and Defendants' insurance policy were part of each of the three transactions that Allen completed on Expedia's website. Each time Allen clicked on the button labeled "Complete Booking" on Expedia's website, she agreed to Expedia's Website Terms of Use. *See* Dkt. 11 ¶ 3. Likewise, as Defendants state, "[w]hen [Allen] made each of her purchases through Expedia, [she] also accepted the terms of Defendants' travel insurance policies *as part of the transaction*." Dkt. 10 at 8 (emphasis added). Because these writings are part of each of the three transactions that Allen completed, the Court must interpret them together. *See Kelley*, 198 Wn. App. at 31; *Pelly*, 2 Wn. App. 2d at 868; Restatement § 202(2).

In so doing, "[w]herever reasonable," the Court must interpret "the manifestations of intention of the parties . . . as consistent with each other." Restatement § 202(5). Notably, "[i]n keeping with the general principles of contracts, standardized agreements are subject to separately negotiated or added terms which may supersede the contract." 25 David K. DeWolf et al., *Washington Practice: Contract Law and Practice* § 9:19 (3d ed.

2022); *accord* Restatement § 203(d) ("[S]eparately negotiated or added terms are given greater weight than standardized terms or other terms not separately negotiated.").

Likewise, "[a]n interpretation of a writing which gives effect to all of its provisions is favored over one which renders some of the language meaningless or ineffective." *Wagner v. Wagner*, 95 Wn.2d 94, 101 (1980); *accord* Restatement § 203(a) ("[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect.").

The arbitration clause in Expedia's Website Terms of Use provides:

> You and Expedia agree that **any and all Claims will be resolved by binding arbitration, rather than in court,** except that you and we may assert Claims on an individual basis in small claims court if they qualify. *This includes any Claims you assert against* us, our subsidiaries, travel suppliers or *any companies offering products or services through us (which are beneficiaries of this arbitration agreement)*.

Dkt. 11-1 at 3 (second emphasis added).

Expedia's Website Terms of Use also define the "Claims" subject to this arbitration clause broadly as "any disputes between you and us arising out of or relating in any way to the Website, these Terms of Use, our Privacy Policy, *any services or products provided*, any dealings with our customer service agents, or any representations made by us." Dkt. 11-1 at 3 (emphasis added). The Website Terms of Use finally provide that "[t]he arbitrator will have authority to decide issues as to the scope of *this* arbitration agreement and the arbitrability of Claims." Dkt. 11-1 at 4 (emphases added).

1    In stark contrast to these provisions, the arbitration clause in Defendants'
2 separately-executed insurance policies states: "Notwithstanding anything in this coverage
3 to the contrary, any claim arising out of or relating to this contract, or its breach, *may* be
4 settled by arbitration, *if mutually acceptable*." Dkts. 15-2 at 8, 15-4 at 9 (emphasis
5 added).

6    Defendants contend that Allen clearly and unmistakably agreed to arbitrate the
7 arbitrability of her claims against them. Dkt. 10 at 10. This is so, they assert, because "the
8 parties clearly agreed" under Expedia's Website Terms of Use "that '[t]he arbitrator will
9 have authority to decide issues as to the scope of this arbitration agreement and the
10 arbitrability of Claims.'" *Id.* (quoting Dkt. 11-1 at 4). They also claim that, because
11 Expedia's Website Terms of Use state that "Arbitrations will be conducted by the
12 American Arbitration Association (AAA) under its rules, including the AAA Consumer
13 Rules," Dkt. 11-1 at 3, Allen clearly and unmistakably agreed to an AAA rule authorizing
14 arbitrators to decide "'any objections with respect to the existence, scope, and validity of
15 the arbitration agreement or to the arbitrability of any claim or counterclaim.'" Dkt. 10 at
16 11 (quoting AAA Consumer Arbitration Rule 14(a)).

17    Allen responds that the arbitration clause in Defendants' insurance policies
18 governs her claims, not the arbitration clause in Expedia's Website Terms of Use. Dkt. 14
19 at 6. Allen further asserts that she did not clearly and unmistakably agree to arbitrate the
20 arbitrability of her claims because, unlike Expedia's Website Terms of Use, Defendants'
21 insurance policies "ha[ve] no delegation clause and provide[] for arbitration only if the
22 parties mutually agree to arbitrate." *Id.*

For at least five reasons, Allen did not clearly and unmistakably agree to arbitrate the arbitrability of her claims against Defendants. First, the separately-executed arbitration clause in Defendants' insurance policies supersedes the standardized arbitration clause in Expedia's Website Terms of Use. *See* 25 David K. DeWolf et al., *supra*, § 9:19; Restatement § 203(d). Under the Expedia arbitration clause, Defendants are mere unnamed, third-party beneficiaries. *See* Dkt. 11-1 at 3. Allen agreed to this standardized arbitration clause each time she completed a transaction on Expedia's website. *See* Dkt. 11 ¶ 3. By comparison, the separately-executed insurance policies explicitly name and apply to Defendants, *see generally* Dkts. 15-2, 15-4, and expressly added an arbitration clause that encompasses Allen's claims. *See* Dkts. 15-2 at 8, 15-4 at 9. Allen was first provided access to each of these policies through an email message after she completed each transaction on Expedia's website. *See* Dkt. 1 ¶ 36; Dkt. 15-1; Dkt. 15-3. In short, Defendants' separately-executed arbitration clause demonstrates a clear intent to opt out of Expedia's standardized arbitration clause.

Second, the delegation clause in Expedia's Website Terms of Use applies to only the arbitration agreement in those Website Terms of Use, not the arbitration agreement in Defendants' insurance policies. This delegation clause provides that "[t]he arbitrator will have authority to decide issues as to the scope of *this* arbitration agreement and the arbitrability of Claims." Dkt. 11-1 at 4 (emphasis added). The delegation clause therefore does not apply to the controlling arbitration agreement in the insurance policies.

Third, this delegation clause also directly conflicts with the arbitration clause in Defendants' own insurance policies. As Allen correctly notes, the insurance policies do

not delegate issues of arbitrability to an arbitrator and, instead, require the parties to mutually accept arbitration before any dispute may be arbitrated. *See* Dkts. 15-2 at 8, 15-4 at 9 ("[A]ny claim arising out of or relating to this contract, or its breach, *may* be settled by arbitration, *if mutually acceptable*." (Emphasis added)). Interpreting Expedia's Website Terms of Use and Defendants' insurance policies together, *see Kelley*, 198 Wn. App. at 311, *Pelly*, 2 Wn. App. 2d at 868, Restatement § 202(2), Allen did not clearly and unmistakably agree to arbitrate the arbitrability of her claims against Defendants.

Fourth, Defendants' interpretation erroneously gives no effect to the arbitration clause in their own insurance policies. *See Wagner*, 95 Wn.2d at 101 (1980); Restatement § 203(a). Even if Defendants' separately-executed arbitration clause did not supersede Expedia's arbitration clause, the conflict between these two arbitration clauses defeats any claim that Allen clearly and unmistakably agreed to arbitrate the arbitrability of her claims.

Fifth, although Expedia's Website Terms of Use incorporate AAA Consumer Rule 14(a),[2] that rule also applies to only the arbitration agreement in those Website Terms of Use, not the arbitration agreement in Defendants' insurance policies. *See* AAA Consumer Rule 14(a) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of *the* arbitration agreement or the arbitrability of any claim of counterclaim." (Emphasis added)). Because

---

[2] Expedia's Website Terms of Use provide: "You and Expedia agree that any and all Claims will be resolved by binding arbitration . . . . Arbitrations will be conducted by the American Arbitration Association (AAA) under its rules, including the AAA Consumer Rules." Dkt. 11-1 at 3.

ORDER - 9

the arbitration clause in Defendants' insurance policies prohibits arbitration unless it is mutually acceptable, the incorporation of AAA Consumer Rule 14(a) in Expedia's Website Terms of Use does not show that Allen clearly and unmistakably agreed to arbitrate the arbitrability of her claims against Defendants.[3]

For all these reasons, Allen did not clearly and unmistakably agree to arbitrate the arbitrability of her claims against Defendants. The Court therefore interprets the writings to determine whether Allen's claims fall within the scope of Expedia's arbitration clause or Defendants' arbitration clause.

Defendants paradoxically argue that the arbitration clause in Expedia's Website Terms of Use governs Allen's claims, not the arbitration clause in their own insurance policies. Dkt. 10 at 11. They assert that the Expedia's arbitration clause "plainly applies to Plaintiff Allen's claims against Defendants because Allen admits that the Defendants offered Travel Guard services to her through Expedia's website" and, therefore, "Defendants are intended third-party beneficiaries of Plaintiff Allen's arbitration agreements with Expedia." *Id.* at 14.

Defendants' interpretation is precisely backwards. It prioritizes the general and standardized language in an agreement to which Defendants are mere unnamed, third-party beneficiaries over the more-specific and separately-executed language in their own insurance policies. This violates fundamental principles of contract interpretation.

---

[3] In any event, the Ninth Circuit Court of Appeals has expressly "not decide[d] . . . 'the effect [if any] of incorporating [AAA] arbitration rules into consumer contracts.'" *Brennan*, 796 F.3d at 1131 (quoting *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1075 n.2)).

Again, separately-executed or added terms concerning the same subject matter supersede standardized terms or terms that are not separately executed. *See* 25 David K. DeWolf et al., *supra*, § 9:19; Restatement § 203(d). Similarly, "[i]t is a well-known principle of contract interpretation that 'specific terms and exact terms are given greater weight than general language.'" *Adler v. Fred Lind Manor*, 153 Wn.2d 331, 354 (2004) (quoting Restatement § 203(c)).

Defendants' insurance policies contain an arbitration clause that was executed separately from the standardized arbitration clause in Expedia's Website Terms of Use. This evidences a clear intent to opt out of the standardized arbitration clause in Expedia's Website Terms of Use. For this reason alone, the arbitration clause in Defendants' insurance policies controls.

The arbitration clause in Defendants' insurance policies also controls because it applies more specifically to Allen's claims than does Expedia's arbitration clause. Whereas the arbitration clause in Expedia's Website Terms of Use applies generally to "any disputes . . . arising out of or relating in any way to . . . any services or products provided," Dkt. 11-1 at 3, the arbitration clause in Defendants' insurance policies applies more specifically to "any claim arising out of or relating to this contract, or its breach." Dkts. 15-2 at 8, 15-4 at 9. Allen's claims arise out of or relate to Defendants' insurance policies. Accordingly, the more-specific language in those policies controls over the more-general language in the Website Terms of Use. *See Adler*, 153 Wn.2d at 354; Restatement § 203(c).

Defendants' interpretation of the writings also violates another principle of contract interpretation. As explained, an interpretation which gives effective meaning to all the terms is preferred to an interpretation which leaves a part of no effect. *See Wagner*, 95 Wn.2d at 101 (1980); Restatement § 203(a). Accepting Defendants' interpretation would leave the arbitration clause in their insurance policies of no effect. The Court declines to adopt such an interpretation.

Defendants further assert that the arbitration clause in their insurance policies is merely "permissive" and, therefore, it does not conflict with Expedia's "mandatory" arbitration clause. Dkt. 10 at 15–17. They contend that "the arbitration agreement contained in Plaintiff's insurance policies is arguably susceptible to two interpretations: either as a permissive clause allowing arbitration by mutual agreement, or in the alternative, as a mandatory provision prohibiting arbitration if either party refuses." *Id.* at 19. They claim that "the former reading is by far the more natural because the agreements simply state that claims 'may be settled by arbitration, if mutually acceptable,' rather than stating claims may *not* be settled by arbitration *unless* mutually acceptable." *Id.* They then concede that "[a] contrary interpretation that reads the clauses as conflicting, on the other hand, would necessarily require invalidating Expedia's mandatory arbitration clause." *Id.* at 20.

Contrary to Defendants assertion otherwise, the arbitration clause in their insurance policies is not merely "a permissive clause allowing arbitration by mutual agreement" as opposed to "a mandatory provision prohibiting arbitration if either party refuses." Dkt. 10 at 19. It does *both* things. Defendants cannot avoid a conflict by simply

describing the effect of an arbitration agreement in the positive rather than in the negative.

In any event, under either interpretation, Defendants' arbitration clause plainly conflicts with Expedia's arbitration clause. The Seventh Circuit Court of Appeals' decision in *Bradford Scott-Data Corp., Inc. v. Physician Computer Network, Inc.*, 136 F.3d 1156 (7th Cir. 1998), is informative. In that case, the parties entered into an agreement in 1988 that mandated arbitration: "In the event of any dispute or controversy between the parties hereto arising out of or relating to this Agreement or any transaction contemplated hereunder, such dispute or controversy *shall* be submitted to arbitration." *Id.* at 1158 (emphasis added). The same parties entered into another agreement in 1993 that merely permitted arbitration: "[E]ither party *can* submit any payment dispute . . . to arbitration." *Id.* at 1157 (emphasis added). The Seventh Circuit adopted the trial court's ruling that "the narrow 1993 arbitration clause flatly contradicts the arbitration provisions of the 1988 agreement" and held that "[t]he arbitration clause in the 1993 Agreement is therefore controlling and defeats defendants' demand for arbitration under the 1988 Agreement." *Id.* at 1158 (internal quotation marks omitted).

The arbitration clause in Defendants' insurance policies does not merely permit the parties to arbitrate their claims, it also requires the parties to mutually accept arbitration before any claim may be delegated to an arbitrator. Their arbitration clause therefore stands in even starker contrast to Expedia's arbitration clause. Because these disputed arbitration clauses directly conflict, the arbitration clause in Defendants'

insurance policies controls. *See Bradford Scott-Data Corp., Inc.*, 136 F.3d at 1158; *see also* Dkt. 10 at 20.

In sum, fundamental principles of contract interpretation dictate only one reasonable interpretation of the writings: the arbitration clause in Defendants' insurance policies applies to Allen's claims, not the arbitration clause in Expedia's Website Terms of Use. The controlling arbitration clause prohibits arbitration unless it is mutually acceptable. Allen does not accept arbitration. The Court accordingly declines to compel this matter to arbitration.

### III.  ORDER

Therefore, it is hereby **ORDERED** that Defendants' motion to compel arbitration, Dkt. 10, is **DENIED**.

Dated this 24th day of July, 2023.

BENJAMIN H. SETTLE
United States District Judge